IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

John Doe 3,                  )

                        )

          Plaintiff,     )

                        )

     vs.                   )

                        )

Varsity Brands, LLC; Varsity Spirit, LLC; )

Varsity Brands Holding Company, Inc.;  )

U.S. All Star Federation, Inc. d/b/a U.S. All )

Star Federation; USA Federation for Sport )

Cheering d/b/a USA Cheer; Charlesbank )

Capital Partners, LP; Bain Capital, LP; Jeff )

Webb, individually; Rockstar Cheer &  )

Dance, Inc.; Katherine Anne Foster, as the )

personal representative of the Estate of  )

Scott Foster; Kathy Foster; Traevon Black )

a/k/a Trey Black n/k/a Tracey Black; Jarred )

Carruba; and other unknown defendants,  )

                        )

          Defendants.    )

**C.A. No.  6:22-3510-HMH**

**OPINION & ORDER**

Before the court is Defendant U.S. All Star Federation's ("USASF") motion to dismiss

Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6).  For the reasons below, the

court grants in part and denies in part USASF's motion.

## I. BACKGROUND

Plaintiff is a former youth cheerleader who alleges that he was sexually abused by

coaches employed by Defendant Rockstar Cheer & Dance, Inc. ("Rockstar Cheer"), a

cheerleading gym affiliated with the Varsity Defendants.[1]  In addition to pursuing claims against

the individual coaches and Rockstar Cheer, Plaintiff seeks to hold Varsity, Jeff Webb ("Webb"),

---

[1]  The court refers to Defendants Varsity Brands, LLC ("Varsity Brands"), Varsity
Brands Holding Company, Inc. ("Varsity Holding"), and Varsity Spirit, LLC ("Varsity Spirit")
collectively as "Varsity" or the "Varsity Defendants."

Bain Capital, LP ("Bain"), Charlesbank Capital Partners, LP ("Charlesbank"), and competitive cheerleading's governing bodies – USA Federation for Sport Cheering ("USA Cheer") and USASF – liable for misrepresenting the safety of Varsity gyms and competitions and failing to adopt and enforce adequate athlete-safety policies and procedures. The facts below are taken from Plaintiff's complaint unless otherwise noted and are accepted as true for purposes of the present motion. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[2]

### A. Overview of All Star Cheerleading

Unlike traditional sideline cheerleading, All Star cheerleading is a competition-based sport unto itself. (Compl. ¶¶ 31-32, ECF No. 1.) All Star cheer teams compete by performing two-and-a-half minute routines set to music, which incorporate elements of tumbling, stunting, cheer, and dance. (Id. ¶ 31, ECF No. 1.) According to Plaintiff, over four million athletes across the United States participate in All Star cheerleading at some level, with many training and competing year-round. (Id. ¶¶ 33, 35, ECF No. 1.) This level of commitment is expensive: a single season costs anywhere from $3,000 to $7,000 per athlete, while some families spend more than $20,000 a year for transportation, lodging, membership fees, merchandise, and uniforms. (Id. ¶ 34, ECF No. 1.)

The beginnings of the competitive cheerleading industry can be traced to Webb's founding of the predecessor to Varsity Spirit in 1974. (Id. ¶ 41, ECF No. 1.) Varsity Spirit began as a provider of educational training camps for cheerleaders and has since expanded into

---

[2] This case is one of four cases before the court involving similar allegations of sexual assault and essentially the same defendants. 6:22-cv-02957-HMH; 6:22-cv-03508-HMH; 6:22-cv-03509-HMH. USASF has moved to dismiss the other three cases as well. Those motions will be addressed in separate orders.

selling uniforms and apparel and organizing cheer competitions. (Compl. ¶¶ 41-43, ECF No. 1.)
It now controls an estimated 80-90% of the All Star cheer market. (Id. ¶ 45, ECF No. 1.) From
2014 to 2018, Varsity was wholly owned by Charlesbank, a Boston-based company. (Id. ¶¶ 27,
105, ECF No. 1.) Today, Varsity is owned by another Boston-based company – Bain – which
purchased Varsity in 2018 for $2.8 billion.[3] (Id. ¶¶ 28, 107, ECF No. 1.)

Two governing bodies oversee competitive cheerleading in the United States: USASF
and USA Cheer. (Id. ¶¶ 26, 80, 84, 86, ECF No. 1.) Plaintiff maintains that Varsity was heavily
involved in creating and operating both organizations. For example, Varsity allegedly advanced
a $1.8 million interest-free loan to help launch USASF, submitted USASF's trademark
application, and for at least fifteen years, housed USASF's offices at its corporate address and
paid USASF's employees directly. (Compl. ¶¶ 79, 88-90, ECF No. 1.) Varsity also continues to
control a majority of the seats on USASF's board of directors, including all seats with voting
rights. (Id. ¶ 91, ECF No. 1.) Similar to USASF, USA Cheer was purportedly created in 2007
with the help of an interest-free loan from Varsity, listed "Varsity's Tennessee headquarters as
its own," and at one time had six Varsity employees on its board. (Id. ¶¶ 84-85, 94, ECF No. 1.)

As a result of Webb's and Varsity's ties to cheerleading's governing bodies, Plaintiff
contends, Webb and Varsity "were entirely self-regulated" and could control "all aspects of All-
Star cheer." (Id. ¶¶ 77, 99, ECF No. 1.) As examples, Plaintiff points out that:

- All Star athletes must buy a USASF membership to compete at Varsity events. (Id. ¶ 48, ECF No. 1.)

- All Star athletes are required to pay annual or monthly dues to Varsity and their local

---

[3] At the same time, Plaintiff alleges that "Charlesbank made a new investment in Varsity
alongside . . . Bain and retained a minority stake in the business." (Compl. ¶ 107, ECF No. 1.)

Varsity-affiliated gym for "competition attendance, uniforms, accessories, and other related fees." (Compl. ¶ 53, ECF No. 1.)

• "Gyms and coaches likewise pay monthly or annual fees to USASF, USA Cheer and the Varsity Defendants." (Id. ¶ 54, ECF No. 1.)

• Affiliate gyms are required "to sign multi-year supply contracts whereby the gyms are paid cash rebates from Varsity Spirit, LLC for buying [its] merchandise and for sending athletes to Varsity events." (Id. ¶ 51, ECF No. 1.)

• "[M]embership in USASF[] and with a Varsity-affiliated gym mandates competing in a specified number of annual [V]arsity events." (Id. ¶ 58, ECF No. 1.)

• Athletes and their families must purchase rooms at Varsity-selected hotels while at Varsity competitions; the failure to do so "subjects the athlete to disqualification." (Id. ¶ 60, ECF No. 1.)

### B. Scott Foster and the Rockstar Cheer Gym

Defendant Scott Foster cheered collegiately at the University of Louisville, "a pre-eminent [sic] name in the world of competitive cheerleading," and began coaching youth cheerleaders in Kentucky in 1996. (Compl. ¶¶ 169-70, ECF No. 1.) Shortly after moving to Greenville, South Carolina in 1999, Scott Foster opened an All Star cheer gym together with his wife, Defendant Kathy Foster. (Id. ¶ 172, ECF No. 1.) The couple at one point also operated World Spirit Federation, a competition cheerleading company, before selling the company to Varsity Brands in 2006. (Id. ¶ 173, ECF No. 1.) A year later, in 2007, Scott and Kathy Foster opened Rockstar Cheer in Greenville. (Id. ¶ 174, ECF No. 1.) Rockstar Cheer's stated mission was "[t]o provide a structured environment of competitive cheerleading while accomplishing our goals [and] to teach dedication, commitment, self-confidence, teamwork, discipline, responsibility, and leadership in a family-friendly, safe and fun environment." (Id. ¶ 175, ECF No. 1.) To this end, USASF certified Rockstar Cheer "as meeting All-Star standards with

4

respect to coach credentials, program quality, and athlete safety." (Compl. ¶ 176, ECF No. 1.)
According to Plaintiff, this meant that USASF "warrant[ed] that [Rockstar Cheer], its coaches,
and its choreographers were safe[] and followed best practices . . . to prevent athlete abuse." (Id.
¶ 50, ECF No. 1.)

In 2018, one of Rockstar Cheer's teams, Beatles, won Varsity's World Championship
title. (Id. ¶ 179, ECF No. 1.) This accomplishment "further elevated Rockstar's status" and
allowed Scott and Kathy Foster "to recruit athletes nationwide." (Id. ¶¶ 178-79, ECF No. 1.)

### C. Plaintiff's Allegations of Abuse

John Doe 3 began cheering for Rockstar Cheer in 2014 when he was 15 years old. (Id.
¶ 209, ECF No. 1.) It was around this time that he met Defendant Traevon Black a/k/a Trey
Black n/k/a Tracey Black ("Black"), a 20-year-old Rockstar Cheer coach. (Compl. ¶ 212, ECF
No. 1.) John Doe 3 alleges that Black engaged in sexual intercourse with him on numerous
occasions between 2014 and 2015. (Id. ¶ 213, ECF No. 1.) John Doe 3 contends that the sexual
conduct between him and Black was "well known" among coaches and staff at Rockstar Cheer.
(Id. ¶ 215, ECF No. 1.) John Doe 3 also claims that another Rockstar Cheer coach – Defendant
Jarred Carruba ("Carruba") – sent him sexually explicit messages and photographs on Snapchat
during this time. (Id. ¶ 216, ECF No. 1.) According to John Doe 3, both Black and Carruba
knew that he was only 15 years old. (Id. ¶¶ 214, 217, ECF No. 1.) In addition, the complaint
accuses Scott Foster of providing John Doe 3 with alcohol, cigarettes, and cocaine. (Compl.
¶¶ 218-19, ECF No. 1.) Since leaving Rockstar Cheer, "John Doe 3 has participated in sexual
abuse therapy to cope with the trauma associated with the years of abuse" by Black. (Id. ¶ 220,
ECF No. 1.)

**D. Procedural History**

Plaintiff filed his complaint on October 11, 2022. Against USASF, he asserts statutory

claims under the Child Abuse Victims' Rights Act of 1986 ("CAVRA"), 18 U.S.C. § 2255; the

Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and

(d); and the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-20,

in addition to common-law claims for gross negligence, negligent supervision, breach of

contract, fraud, and civil conspiracy. (Compl., ECF No. 1.) On January 30, 2023, USASF

moved to dismiss all claims asserted against it for failure to state a claim under Rule 12(b)(6).

(USASF Mot. Dismiss, ECF No. 65) Plaintiff responded in opposition on February 13, 2023.

(Resp. Opp'n USASF Mot. Dismiss, ECF No. 75.) USASF filed its reply on February 21,

2023.[4] (USASF Reply, ECF No. 86.) This matter is now ripe for decision.[5]

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at

678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility

standard is met "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing

---

[4] On March 1, 2023, Plaintiffs in the 6:22-2957 case filed a motion before the United States Judicial Panel on Multidistrict Litigation seeking to transfer all related, pending civil actions filed in districts throughout the United States. See Motion to Transfer, In re Varsity Spirit Athlete Abuse Litig., MDL No. 3077, ECF No. 1. The motion to transfer was denied on June 5, 2023. In re Varsity Spirit Athlete Abuse Litig., MDL No. 3077, 2023 WL 3828645 (J.P.M.L. June 5, 2023).

[5] Under Local Rule of Civil Procedure 7.08, the court may decide motions without a hearing.

6

Twombly, 550 U.S. at 556).  "'[D]etailed factual allegations'" are not required, but the plaintiff

must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id.

(quoting Twombly, 550 U.S. at 555).  In reviewing the complaint, the court "must accept the

factual allegations of the complaint as true and construe them in the light most favorable to the

nonmoving party."  Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir.

2018).

### III. DISCUSSION

USASF has moved to dismiss all ten counts asserted against it for failure to state a claim.

The court will address each claim in turn.

### A. CAVRA Claim Under 18 U.S.C. § 2255 (Count I)

Congress enacted § 2255 as part of the CAVRA to address the "multi-million dollar"

child exploitation industry and the "lack [of] effective remedies" available to "exploitation

victims" "under Federal law."  Pub. L. No. 99-500, § 702, 100 Stat. 1783, 1783-74 (1986).

Section 2255 empowers victims of certain felonies related to sex trafficking, sexual abuse, and

the distribution of child pornography to recover damages for the harms caused by their abusers.

The statute reads:

> Any person who, while a minor, was a victim of a violation of section 1589, 1590,
> 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423
> of this title and who suffers personal injury as a result of such violation . . . may sue
> in any appropriate United States District Court and shall recover the actual damages
> such person sustains or liquidated damages in the amount of $150,000, and the cost
> of the action, including reasonable attorney's fees and other litigation costs
> reasonably incurred.  The court may also award punitive damages and such other
> preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2255(a).  No criminal conviction is necessary to recover damages.  Prewett v.

7

Weems, 749 F.3d 454, 458 (6th Cir. 2014) (reaching this conclusion after considering the plain

meaning of the term "violation," distinct uses of "violation" and "conviction" in neighboring

statutes, and civil RICO's violation requirement).  Rather, a plaintiff need only show that the

defendant committed one of the enumerated offenses by a preponderance of the evidence.  Id.;

Smith v. Husband, 376 F. Supp. 2d 603, 613 (E.D. Va. 2005); Doe v. Liberatore, 478 F. Supp.

2d 742, 755 (M.D. Pa. 2007).

> The complaint alleges that John Doe 3
>
> was a minor at the time he was sexually abused and assaulted, sexually exploited,
> transported across state lines for illegal sexual activity, and/or used in creating or
> receiving illegal and obscene digital materials in contravention of *18 U.S.C §§
> 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, and 2223*, thus
> constituting violations of 18 U.S.C. §2255.

(Compl. ¶ 230, ECF No. 1) (emphasis added).  Plaintiff claims that these acts were "enabled by

the ongoing certification and ratification" of Varsity, USASF, USA Cheer, Bain, and

Charlesbank since Rockstar Cheer was "held out" by those Defendants "as being part of a

network of safe and trustworthy cheer coaching gyms."  (Id. ¶¶ 225, 229, ECF No. 1)  As

explained below, however, Plaintiff has not stated a plausible claim for relief against USASF

under § 2255.

To begin, notably absent from Plaintiff's response to USASF's motion to dismiss is any

discussion of the eleven predicate offenses cited in the complaint.  Plaintiff instead spends

several pages discussing only 18 U.S.C. §§ 1589 (forced labor) and 1591 (sex trafficking) –

statutes that he did not include in his complaint.  The court cannot consider claims raised for the

first time in a response to a motion to dismiss.  2 James Wm. Moore, Moore's Federal Practice

§ 12.34[2] (3d ed. 2022);  Mylan Labs., Inc. v. Akzo, N.V., 770 F.Supp. 1053, 1068 (D. Md.

1991) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101, 1107 (7th Cir. 1984))); <u>Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.</u>, 836 F.2d 173, 181 (3d Cir. 1988) ("[L]egal theories set forth in [a] brief are helpful only to the extent that they find support in the allegations set forth in the complaint."). To hold otherwise would effectively allow a party to circumvent the amendment requirements of Rule 15(a).[6] <u>See</u> <u>Morgan Distrib. Co. v. Unidynamic Corp.</u>, 868 F.2d 992, 995 (8th Cir. 1989).

In any event, Plaintiff's § 2255 claim fails on the merits for three reasons. First, Plaintiff has not pled specific facts suggesting that USASF itself committed any of the predicate offenses actually alleged in the complaint. (Compl. ¶¶ 209-222, ECF No. 1) (detailing allegations of abuse committed by Defendants Black and Carruba); <u>Upton v. Vicknair</u>, No. 21-407, 2021 WL 2635460, at *5 (E.D. La. June 25, 2021) (unpublished) ("[A] claim under § 2255 is limited to a defendant [who] committed the acts described in any of the listed offenses. Because Plaintiff does not allege that the City Defendants violated any of the enumerated statutes, this claim will be dismissed." (internal quotation marks and citation omitted)).

Second, to the extent Plaintiff is relying on a vicarious liability theory, that claim fails because the complaint does not plausibly allege that Plaintiff's abusers were agents of USASF. Although § 2255 does not address vicarious liability, the court must assume that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules."

---

[6] Even if the court were to consider the new grounds for relief that Plaintiff raises in his response brief, Plaintiff has not sufficiently alleged how USASF violated § 1589(b) or § 1591(a)(2).

Meyer v. Holley, 537 U.S. 280, 285 (2003); United States v. Texas, 507 U.S. 529, 534 (1993) ("In order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law." (internal quotation marks omitted)).  This theory of liability thus requires allegations suggesting an agency relationship between John Doe 3's alleged abusers and USASF.  Meyer, 537 U.S. at 285 ("[T]raditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment.").  More specifically, it requires facts that USASF both had the right to control Black and Carruba and consented to them acting on its behalf.  Id. at 286; Restatement (Second) of Agency § 1 (Am. L. Inst. 1958) (stating that an agency relationship is created when one person agrees with another "that the other shall act on his behalf and subject to his control").

The court's review of the complaint reveals that Plaintiff has pled no such facts.  The complaint merely alleges that Black and Carruba paid dues to USASF and were employed by a private All Star gym certified by USASF whose athletes competed in USASF-sanctioned events. (Compl. ¶¶ 16, 17, 54, 58, 168, 176, ECF No. 1.)  Nowhere does the complaint allege that there was express or implicit agreement that the coaches would act on USASF's behalf and subject to its control.  See Restatement (Second) of Agency § cmt. a (Am. L. Inst. 1958) ("The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on the principal's behalf and subject to his control.").  Plaintiff's failure to adequately allege an agency relationship is fatal to his attempt to hold USASF liable for the alleged predicate offenses committed by his abusers.

Finally, to the extent Plaintiff seeks to hold USASF secondarily liable under an aiding-and-abetting theory, a plain reading of § 2255 and Supreme Court case law foreclose that argument.[7]

When interpreting a statute, the court begins, as always, with the statute's text. United States v. Bryant, 949 F.3d 168, 174 (4th Cir. 2020). The court "must presume that [Congress] says in a statute what it means and means in a statute what it says." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." Id. at 254 (internal quotation marks omitted). Section 2255 makes no mention of secondary liability, which "by itself is an indication that Congress did not intend to permit such a theory." Doe v. City of Gauley Bridge, No. 2:21-cv-00491, 2022 WL 3587827, at *13 (S.D. W. Va. Aug. 22, 2022) (unpublished); Boim v. Holy Land Found. for Relief & Dev., 549 F.3d 685, 689 (7th Cir. 2008) (en banc) (Posner, J.) ("[S]tatutory silence on the subject of secondary liability means there is none.").

To be sure, the court recognizes that a few other courts have read secondary liability into § 2255. See Liberatore, 478 F. Supp. 2d at 756-57; Doe v. Schneider, No. 08-3805, 2013 WL 5429229, at *10 (E.D. Pa. Sept. 30, 2013) (unpublished) (following Liberatore; M.A. ex rel.

---

[7] The federal aiding-and-abetting statute provides that "[w]hoever . . . aids, abets, counsels, commands, induces or procures [the commission of an offense against the United States] is punishable as a principal." 18 U.S.C. § 2(a). USASF and the authorities on which it relies seem to conflate vicarious liability with aiding-and-abetting liability. Vicarious liability allows a defendant to be held liable for the bad acts of another simply because of the defendant's relationship with the wrongdoer. Restatement (Second) of Agency § 219 (Am. L. Inst. 1958). On the other hand, aiding-and-abetting liability holds a defendant responsible for his own acts in helping the wrongdoer. Rosemond v. United States, 572 U.S. 65, 71 (2014) ("[A] person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission.").

P.K. v. Village Voice Media Holdings, LLC, 809 F. Supp. 2d 1041, 1053-54 (E.D. Mo. 2011) (same).  In doing so, however, those courts overlooked the Supreme Court's decision in Central Bank, N.A. v. First Interstate Bank, N.A., 511 U.S. 164 (1994).  Central Bank concerned whether a private cause of action extends to suits against aiders and abettors of securities fraud under § 10(b) of the Securities and Exchange Act of 1934.  511 U.S. at 167.  The Court answered that question in the negative, reasoning that "Congress kn[ows] how to impose aiding and abetting liability when it cho[oses] to do so.  If . . . Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text.  But it did not."  Id. at 176-77 (internal citations omitted).  The Court went on to explain that because "Congress has not enacted a general civil aiding and abetting statute," "there is no general presumption that [a] plaintiff may also sue aiders and abettors" when Congress creates a private cause of action.  Id. at 182.

Central Bank's rationale is not limited to the context of federal securities laws, as "nothing in its holding turns on particular features of those laws."  Boim, 549 F.3d at 689; see also Owens v. BNP Paribas, S.A., 897 F.3d 266, 277-78 (D.C. Cir. 2018) (relying on Central Bank in holding that the pre-Justice Against Sponsors of Terrorism Act version of 18 U.S.C. § 2333 does not permit aiding-and-abetting liability); Freeman v. DirecTV, Inc., 457 F.3d 1001, 1006 & n.1 (9th Cir. 2006) (relying on Central Bank in holding that §§ 2702 and 2707 of the Electronic Communications Privacy Act do not allow for secondary liability).  As a result, the court finds the reasoning of Central Bank controlling and declines to read secondary liability into § 2255.

Based on the above, Plaintiff has failed to state a § 2255 claim USASF. The court therefore grants USASF's motion to dismiss Count I.

**B. RICO Claims Under 18 U.S.C. § 1962(c), (d) (Count II)**

18 U.S.C. § 1964 provides a civil cause of action for "[a]ny person injured in his business or property by reason of a violation" of RICO's substantive provisions found in § 1962. Section 1962(c), in turn, prohibits "any person employed by or associated with any enterprise" that engages in interstate commerce from "conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." To state a claim under § 1962(c), then, a plaintiff must allege that the defendant (1) conducted (2) an enterprise (3) through a pattern (4) of racketeering activity, Sedima, S.P.R.L. v. Imrex, Co., 473 U.S. 479, 496 (1985), and that the plaintiff suffered injury to "business or property" as a result, Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc., 262 F.3d 260, 264 (4th Cir. 2001). RICO's conspiracy provision, § 1962(d), makes it "unlawful for any person to conspire to violate any of the provisions" of § 1962, including § 1962(c).

USASF challenges nearly every aspect of Plaintiff's RICO claims under §§ 1962(c) and (d). As explained below, the court finds that Plaintiff has not plausibly alleged (1) RICO standing, (2) an association-in-fact enterprise, or (3) that USASF conspired to commit a RICO violation.

**1. RICO Standing**

RICO's standing requirement has two elements: injury to "business or property" and causation. Brandenburg v. Seidel, 859 F.2d 1179, 1187 (4th Cir. 1988).

To begin, USASF correctly notes – and Plaintiff does not appear to challenge – that any personal injuries Plaintiff may have suffered as a result of his alleged abuse cannot confer RICO standing.  Bast v. Cohen, Dunn & Sinclair, P.C., 59 F.3d 492, 496 (4th Cir. 1995) ("[A]llegation[s] of personal injury and pecuniary losses occurring therefrom are not sufficient to meet the statutory requirement of injury to 'business or property.'").  Plaintiff, for his part, argues that his lost ability to cheer competitively and the dues and fees he paid Varsity and USASF are sufficient to satisfy RICO's standing requirement.  The court will discuss the sufficiency of these alleged harms in turn.

### a. Lost Ability to Cheer Competitively

Plaintiff contends that he had an identifiable property interest in the "continued ability to cheer competitively," which would have allowed him to achieve and monetize social media fame, earn an athletic scholarship, and perhaps one day become a cheer coach, gym owner, or event promoter himself.  (RICO Case Statement 48, ECF No. 17.)  This argument lacks merit for two reasons.  First, any injuries that Plaintiff might suffer from having his competitive cheerleading career cut short are too speculative to constitute injury to business or property within the meaning of § 1964(c).  See Price v. Pinnacle Brands, 138 F.3d 602, 607 (5th Cir. 1998) ("Injury to mere expectancy interests or to an intangible property interest is not sufficient to confer RICO standing." (internal quotation marks omitted)).  Plaintiff had, at best, mere expectancy interests in realizing the future financial and business opportunities described in his RICO case statement.  (RICO Case Statement 48, ECF No. 17); see, e.g., Bowen v. Adidas Am., Inc., 541 F. Supp. 3d 670, 679-80 (D.S.C. 2021) (holding that a former college basketball player had an "unrecoverable expectancy interest . . . . in the supposed lost professional earnings he

14

hoped to obtain as a first-round NBA draft pick"); <u>Strates Shows, Inc. v. Amusements of Am., Inc.</u>, 379 F. Supp. 2d 817, 827-28 (E.D.N.C. 2005) (finding that plaintiff lacked a property interest in the expectation of a contract even though plaintiff had been awarded the contract "as a matter of course in past years"); <u>In re Taxable Mun. Bond Sec. Litig.</u>, 51 F.3d 518, 523 (5th Cir. 1995) ("Anderson's suit shows only a lost opportunity to obtain a . . . loan.  Such lost opportunity by itself does not constitute an injury that confers standing to bring a RICO cause of action.").

Second, even if Plaintiff had incurred concrete losses from being unable to continue cheerleading, those losses could not confer RICO standing as they would be derivative of non-compensable personal injuries – that is, those stemming from the alleged sexual abuse Plaintiff suffered.  RICO's "injury to business or property" requirement excludes from its reach not only personal injuries, but also "pecuniary losses occurring therefrom." <u>Bast</u>, 59 F.3d at 495; <u>Doe v. Roe</u>, 958 F.2d 763, 768-70 (7th Cir. 1992) (miscellaneous expenses flowing from mental distress caused by arrangement in which plaintiff was coerced into paying for legal fees with sexual services not actionable under RICO); <u>Grogan v. Platt</u>, 835 F.2d 844, 848 (11th Cir. 1988) (economic damages, including loss of income, resulting from murder not actionable).

For these reasons, Plaintiff cannot state a RICO claim based on any damages resulting from his lost ability to compete in competitive cheerleading.

### b. Membership Dues and Competition Fees

Next, Plaintiff claims that he has RICO standing based on the "membership dues, fees, and other incidental costs he paid to Defendants."  (RICO Case Statement 48, ECF No. 17.)

15

As an initial matter, the court finds that the sums Plaintiff paid to become a USASF member and compete in Varsity events are sufficient to satisfy RICO's "business or property" requirement.  See Reiter v. Sonotone Corp., 442 U.S. 330, 338 (1979) ("Money, of course, is a form of property.").  With that said, to establish RICO standing, Plaintiff must also show that Defendants' predicate acts were both the but-for and proximate cause of his alleged injuries. Hemi Grp., LLC v. City of New York, N.Y., 559 U.S. 1, 9 (2010).

USASF contends that Plaintiff cannot show causation, citing Gilbert v. U.S. Olympic Comm., No. 18-cv-00981-CMA-MEH, 2019 WL 1058194 (D. Colo. Mar. 6, 2019) (unpublished), Report and Recommendation adopted in relevant part by 423 F. Supp. 3d 1112 (D. Colo. 2019).  The plaintiffs in Gilbert were female taekwondo athletes who allegedly suffered sexual abuse while competing in the USA Taekwondo ("USAT") system.  Id. at *1.  In support of their RICO claim, the plaintiffs argued that they had RICO standing based in part on the $50 annual membership fee they each paid the USAT.  Id. at *24.  The court rejected that argument, reasoning that "Plaintiffs paid $50 in dues to be members of USAT" and "participate in USAT-sanctioned events," not because of the defendants' predicate acts.  Id. at *25.  A similar conclusion is warranted in this case.

"When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries."  Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006) (emphasis added).  In other words, the focus is not "on whether the harm to the RICO plaintiff was a foreseeable result of the defendant's conduct or even whether it was 'the intended consequence[] of [that] behavior,' but rather on 'the directness of the relationship between the conduct and the harm.'"  Slay's Restoration, LLC v.

Wright Nat'l Flood Ins. Co., 884 F.3d 489, 493 (4th Cir. 2018) (emphases removed) (quoting Hemi Grp., 559 U.S. at 12).

In his RICO case statement, Plaintiff merely states that "[t]he actions of the Enterprise and its conspirators were the direct and proximate cause of [his] injuries." (RICO Case Statement 48, ECF No. 17.) Those allegations, however, are precisely the sort of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that the court need not accept. Iqbal, 556 U.S. at 678. Moreover, although Plaintiff claims that "[b]ut for the fraudulent assurances to [him] and his parents that the gyms and coaches were certified safe, *the abuse* would not have been perpetrated," (RICO Case Statement 48-49, ECF No. 17) (emphasis added), nowhere does he allege that he paid dues and fees as a direct result of any party's purported misrepresentations.[8]  Rather, Plaintiff seemingly paid membership dues and

_____

[8] To be sure, a plaintiff asserting a RICO claim based on wire or mail fraud "need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 661 (2008).  The plaintiffs in Bridge were regular participants in a county's tax lien auctions who alleged that the defendants' false attestations of compliance with the county's rule prohibiting simultaneous bidding deprived them of their fair share of winning bids. Id. 642-44.  The Court held that the plaintiffs' RICO claims could proceed even though the defendants' misrepresentations were directed to and relied on by the county – and not the plaintiffs.  The Court clarified, however, that

> none of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations. . . . In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation.

Id. at 658 (emphasis in original).  In contrast to Bridge, this case does not present a third-party reliance scenario.  Thus, if Plaintiff (or his parents) did not rely on Defendants' alleged misrepresentations in paying Plaintiff's membership dues and competition fees, Plaintiff could not have been injured by reason of Defendants' alleged fraudulent scheme.  After all, "a misrepresentation can cause harm only if a recipient of the misrepresentation relies on it."  Id. at 656 n.6.

competition fees out of necessity to participate in events sanctioned by USASF and Varsity.  See (Compl. ¶ 48, ECF No. 1) ("After forming Defendant USASF, Defendant Webb mandated that All-Star athletes cheering on behalf of Varsity-affiliated gyms purchase a USASF membership as a requirement to competing at Varsity-sponsored events."); (Id. ¶ 53, ECF No. 1) ("All-Star athletes competing on behalf of Varsity-associated gyms pay monthly or annual fees to the gym as well as annual fees to the Varsity Defendants for competition attendance, uniforms, accessories, and other related fees."); (Id. ¶¶ 221-22, ECF No. 1); see also Gilbert, 2019 WL 1058194, at *25.

Thus, having not adequately alleged that he was injured "by reason" of Defendants' predicate acts, Plaintiff cannot state a RICO claim based on the "membership dues, fees, and other incidental costs he paid to Defendants."  (RICO Case Statement 48, ECF No. 17.)

## 2. Enterprise

Even if Plaintiff could establish RICO standing, his § 1962(c) claim would still be subject to dismissal for failure to plausibly allege the existence of an association-in-fact enterprise.

A RICO enterprise "includes any . . . group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  "Such a group need not have a hierarchical structure or a 'chain of command'" or business-like characteristics such as "a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies." Boyle v. United States, 556 U.S. 938, 948 (2009).  Rather, "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with

the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's

purpose." Id. at 946.

Plaintiff alleges that all named Defendants formed an association-in-fact enterprise to

"endanger[] Plaintiff . . . and other minor athletes by exposing them to illegal sexual abuse and

exploitation" all while charging them dues and fees "to compete in the self-same system of

abuse." (RICO Case Statement 37, ECF No. 17.) Plaintiff, though, has pled no facts to suggest

that the Rockstar Cheer coaches shared a common purpose with the Varsity Defendants,

USASF, USA Cheer, Webb, Bain, and Charlesbank. Indeed, based on the facts alleged in

Plaintiff's complaint and RICO case statement, the individual coaches and corporate entities

had divergent goals: the coaches sought to prey on minor athletes for their own sexual or

personal gratification; the corporate entities sought to retain athletes and attract new ones to

generate more money. Cf. Baker v. IBP, Inc., 357 F.3d 685, 691 (7th Cir. 2004) (Easterbrook,

J.) (no common purpose where employer allegedly hired undocumented workers to depress

wages because the employer "want[ed] to pay lower wages," "the recruiters want[ed] to be

paid more for services rendered," and the immigrant-welfare organization "want[ed] to assist

members of its ethnic group"); McPeters v. Edwards, 806 F. Supp. 2d 978, 988-89 (S.D. Tex.

2011) (no common purpose because the defendant judge's "purpose in ordering e-filing was to

encourage efficiency, while LexisNexis's purpose was to generate profits"); Marshall v.

Goguen, Cv 21-19-M-DWM, 2022 WL 1641776, *17 (D. Mont. May 24, 2022) (unpublished)

(no common purpose because one defendant "sought to preserve his reputation, while [other

defendants] sought to financially benefit off him"), appeal filed, 22-35499 (9th Cir. June 27,

2022). It strains credulity to suggest, as Plaintiff does, that Varsity, its corporate parents, and

19

cheerleading's governing bodies intended to subject the very athletes they relied on as a major revenue source to "illegal sexual abuse and exploitation" as a means of generating further profits.  (RICO Case Statement 37, ECF No. 17.)  In short, without nonconclusory allegations that Varsity shared a common purpose with the perpetrators of the alleged abuse, Plaintiff has failed to allege a RICO enterprise.

### 3. RICO Conspiracy

Plaintiff's RICO conspiracy claim against Varsity under § 1962(d) is also deficient. Because Plaintiff lacks RICO standing and has not adequately alleged the existence of a RICO enterprise, he cannot assert a § 1962(c) claim against any Defendant.  Without a viable § 1962(c) claim, his conspiracy claim under § 1962(d) necessarily fails, too.  GE Inv. Priv. Placement Partners II v. Parker, 247 F.3d 543, 551 n.2 (4th Cir. 2001); Foster v. Wintergreen Real Est. Co., 363 F. App'x 269, 275 n.6 (4th Cir. 2010) (unpublished).

Even if Plaintiff had sufficiently alleged a substantive RICO violation, his § 1962(d) claim would still be subject to dismissal for failure to state a claim.  "To satisfy § 1962(d), the plaintiff must establish two elements: (1) that two or more people agreed that some member of the conspiracy would commit at least two racketeering acts (i.e. a substantive RICO offense) and, (2) that the defendant knew of and agreed to the overall objective of the RICO offense." Borg v. Warren, 545 F. Supp. 3d 291, 319 (E.D. Va. 2021).  In describing the alleged conspiracy, Plaintiff states that Defendants "operated as a single unified entity with the common goal of taking billions of dollars from minor athletes who wanted to be a part of Defendants' All-Star cheer world" and that Defendants "act[ed] as a collective group" in "endangering [him]."  (RICO Case Statement 47, ECF No. 17.)  Apart from these conclusory allegations,

Plaintiff has alleged no facts tending to show that each Defendant agreed that some member of the conspiracy would commit at least two racketeering acts.  See Chambers v. King Buick GMC, LLC, 43 F. Supp. 3d 575, 607 (D. Md. 2014) ("[B]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." (quoting Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 (2d Cir. 1990))); Walters v. McMahen, 795 F. Supp. 2d 350, 355 (D. Md. 2011) (stating that a plaintiff bringing a § 1962(d) claim must "describe in detail the conspiracy, including the identity of the co-conspirators, the object of the conspiracy, and the date and substance of the conspiratorial agreement").

For these reasons, Plaintiff has failed to state a valid § 1962(d) claim against USASF. The court therefore grants USASF's motion to dismiss Count II in its entirety.

### C. SCUTPA Claim Under S.C. Code Ann. § 39-5-20(a) (Count III)

SCUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  S.C. Code Ann. § 39-5-20(a).  To state a SCUTPA claim, Plaintiff must allege that (1) USASF "engaged in an unfair or deceptive act in the conduct of trade or commerce"; (2) "the unfair or deceptive act affected public interest"; and (3) Plaintiff "suffered monetary or property loss as a result of [USASF's] unfair or deceptive act(s)."  Maybank v. BB&T Corp., 787 S.E.2d 498, 512 (S.C. 2016).

USASF contends that Plaintiff's SCUTPA claim should be dismissed because Plaintiff has not "specifie[d] a practice or action on the part of USASF that 'deceived' [him]."  (USASF's Mem. Supp. Mot. Dismiss 19, ECF No. 65-1.)  Plaintiff responds that he has satisfied the deceptive act requirement based on his allegations that USASF misrepresented its role as "the

safety and oversight branch of the Varsity network."  (Resp. Opp'n USASF Mot. Dismiss 22, ECF No. 75); (Compl. ¶¶ 258, 260, ECF No. 1) (alleging that USASF "promis[ed] safe environments and vetted coaches" and "failed . . . to take corrective actions" when faced with abuse allegations).

Although SCUTPA does not define what qualifies as a "deceptive" act, it provides that courts "will be guided by" Federal Trade Commission ("FTC") and federal court interpretations of § 5(a)(1) of the Federal Trade Commission Act.  S.C. Code Ann. § 39-5-20(b).  A practice is deceptive for § 5(a)(1) purposes if it is material and "likely to mislead" a reasonable consumer. In re Cliffdale Assocs., Inc., 103 F.T.C. 110, 1984 WL 565319, at *37 (1984).  Under this "likely to mislead" standard, the FTC is not required to show proof of actual consumer deception.  Id.; see also Trans World Accounts, Inc. v. F.T.C., 594 F.2d 212, 214 (9th Cir. 1979); Thiret v. F.T.C., 512 F.2d 176, 180 (10th Cir. 1975).  The same is true when the South Carolina Attorney General brings a SCUTPA enforcement action.  State ex rel. Wilson v. Ortho-McNeil-Janssen Pharm., Inc., 777 S.E.2d 176, 189, 192 (S.C. 2015) ("[I]n an enforcement action brought by the Attorney General, there is no actual impact requirement.").

In contrast, a private litigant bringing a SCUTPA claim must show actual injury and a "causal connection" between that injury and the complained-of deceptive act.  Id. (explaining that S.C. Code Ann. § 39-5-140(a) imposes "a requirement beyond the tendency to deceive element").  Establishing this causal connection in a misrepresentation case necessarily requires proof that the plaintiff detrimentally relied on the defendant's deceptive conduct.  See, e.g., Hageman v. Twin City Chrysler-Plymouth, Inc., 681 F. Supp. 303, 308-09 (M.D.N.C. 1988) (applying North Carolina law and stating that "[t]o prove actual causation, a plaintiff must

prove that he or she detrimentally relied on the defendant's deceptive statement or misrepresentation. . . . [A] private plaintiff cannot recover in an action for a deceptive trade practice if the plaintiff is unable to prove that the deceptive practice worked."). It is at this step that Plaintiff's SCUTPA claim fails.

Setting aside whether USASF's conduct was deceptive within the meaning of SCUTPA, the complaint contains no allegations that Plaintiff actually relied on USASF's safety representations in deciding to become a dues-paying USASF member. The complaint does not specify which of USASF's representations Plaintiff encountered (or when he did), nor does it even allege that Plaintiff would have acted differently had he known the truth of USASF's representations related to its role as Varsity's "safety and oversight branch." (Resp. Opp'n USASF Mot. Dismiss 22, ECF No. 75.) Because Plaintiff has not adequately alleged a causal nexus between his payment of dues to USASF, on the one hand, and USASF's purported deceptive conduct, on the other, Plaintiff cannot maintain his SCUTPA claim. Thus, the court grants USASF's motion to dismiss Count III.

### D. Gross Negligence (Count IV)

A negligence claim consists of three elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach." Carolina Chloride, Inc. v. Richland Cnty., 714 S.E.2d 869, 873 (S.C. 2011) (quoting Tanner v. Florence Cnty. Treasurer, 521 S.E.2d 153, 158 (S.C. 1999)). "If any of these elements is absent a negligence claim is not stated." Summers v. Harrison Constr., 381 S.E.2d 493, 495 (S.C. Ct. App. 1989).

23

"Gross negligence is the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." Etheredge v. Richland Sch. Dist. One, 534 S.E.2d 275, 277 (S.C. 2000).  In other words, "[i]t is the failure to exercise slight care."  Id.  "In most cases, gross negligence is a factually controlled concept whose determination best rests with the jury."  Faile v. S.C. Dep't of Juv. Just., 566 S.E.2d 536, 545 (S.C. 2002).  But "when the evidence supports but one reasonable inference, the question becomes a matter of law for the court."  Etheredge, 534 S.E.2d at 277.

USASF argues that Plaintiff's gross-negligence claim must be dismissed because it did not owe Plaintiff a duty of care.

"An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance."  Hendricks v. Clemson Univ., 578 S.E.2d 711, 714 (S.C. 2003).  South Carolina law recognizes that "there is no general duty to control the conduct of another or to warn a third person or potential victim of danger."  Madison v. Babcock Ctr., Inc., 638 S.E.2d 650, 656 (S.C. 2006).  There are, however, five exceptions to this general rule:

> (1) where the defendant has a special relationship to the victim; (2) where the defendant has a special relationship to the injurer; (3) where the defendant voluntarily undertakes a duty; (4) where the defendant negligently or intentionally creates the risk; and (5) where a statute imposes a duty on the defendant.

Id.  Plaintiff argues that the second, third, and fourth exceptions apply.  (Resp. Opp'n USASF Mot. Dismiss 23-26, ECF No. 75.)

The second exception arises "when the defendant 'has the ability to monitor, supervise and control an individual's conduct' *and* when "'the individual has made a specific threat of

24

harm directed at a specific individual.'" Doe v. Marion, 645 S.E.2d 245, 250 (S.C. 2007)

(emphasis added) (quoting Bishop v. S.C. Dep't of Mental Health, 502 S.E.2d 78, 81 (S.C.

1998)).  Plaintiff cannot rely on this exception to establish a duty because, regardless of whether

USASF had the ability to control the individual coaches' conduct, nothing in the complaint

suggests that USASF was aware of a specific threat of harm aimed at John Doe 3.  See id.

("[I]t is not simply foreseeability of the victim which gives rise to a person's liability for failure

to warn; rather, it is the person's awareness of a distinct, specific, overt threat of harm which the

individual makes towards a particular victim." (quoting Gilmer v. Martin, 473 S.E.2d 812, 814

(S.C. Ct. App. 1996))).

     Turning next to the third exception, South Carolina follows the negligent-undertaking

rule set forth in § 323 of the Restatement (Second) of Torts.  Wright v. PRG Real Est. Mgmt.,

826 S.E.2d 285, 290-91 (S.C. 2019).  Section 323 states:

> One who undertakes, gratuitously or for consideration, to render services to another
> which he should recognize as necessary for the protection of the other's person or
> things, is subject to liability to the other for physical harm resulting from his failure
> to exercise reasonable care to perform his undertaking, if
>     (a) his failure to exercise such care increases the risk of such harm, or
>     (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (Am. Law. Inst. 1965).  As for the fourth exception, a duty

may arise when "a defendant creates 'a situation that [it] knew or should have known posed a

substantial risk of injury' to a plaintiff."  In re Blackbaud, Inc., Customer Data Breach Litig.,

567 F. Supp. 3d 667, 682 (D.S.C. 2021) (quoting Edwards v. Lexington Cnty. Sheriff's Dep't,

688 S.E.2d 125, 130 (S.C. 2010)).  In light of these principles, the court finds that Plaintiff has

alleged facts sufficient to show that USASF owed him a duty of care under the third and fourth exceptions.

The complaint alleges that USASF – as All Star cheer's sanctioning body – was "responsible for the safety, health, and welfare" of Plaintiff, who was required to become a USASF member to compete in Varsity events.  (Compl. ¶¶ 48, 58, 80, 267, ECF No. 1.) Plaintiff states that USASF and other Defendants knew of the "dangers" posed by the competitive cheerleading environment and thus created "rules, policies and/or procedures specifically intended to address the risks of sexual, physical, and mental exploitation of minor athletes by coaches[] and adults."  (Id. ¶¶ 268-69, ECF No. 1.)  Yet, despite that knowledge and those guidelines, Defendants (including USASF) allegedly failed to vet coaches, investigate and report complaints of sexual abuse, and enforce rules related to "chaperoning and supervis[ing] minors" and banning coaches.  (Id. ¶¶ 133, 140, 142-45, 151, 153, 208, 270, 274, ECF No. 1.)

Based on these allegations, the court finds that Plaintiff has sufficiently alleged that USASF owed him a duty based on the third and fourth exceptions to the general "no duty to protect" rule.  See In re Blackbaud, 567 F. Supp. 3d at 682 (finding a duty where plaintiff consumers had alleged that defendant cloud software company knew of the risk of cyberattacks and the inadequacy of its systems yet "failed to correct, update, or upgrade its security protections").  The court further finds that Plaintiff has sufficiently pled the breach, damages, and causation elements of his gross-negligence claim.  Thus, USASF's motion to dismiss Count IV for failure to state a claim is denied.

**E. Negligent Supervision (Count V)**

In Count V, Plaintiff asserts a claim for negligent supervision against USASF. Under South Carolina law,

> an employer may be liable for negligent supervision if the employee intentionally harms another when the employee: (1) is upon the premises of the employer, or is using a chattel of the employer, (2) the employer knows or has reason to know that he has the ability to control his employee, and (3) the employer knows or should know of the necessity and opportunity for exercising such control.

Charleston v. Young Clement Rivers & Tisdale, LLP, 598 S.E.2d 717, 722-23 (S.C. Ct. App. 2004) (citing Degenhart v. Knights of Columbus, 420 S.E.2d 495, 496 (S.C. 1992)); see also Restatement (Second) of Torts § 317.

A claim for negligent supervision is necessarily predicated on the existence of an employment relationship. Degenhart, 420 S.E.2d at 496 ("An *employer* may be liable for negligent supervision if the *employee* . . . ." (emphasis added)). Plaintiff, however, does not allege that any of the individual Defendants were employed by USASF. Rather, the complaint reflects that Rockstar Cheer was a privately owned gym, (Compl. ¶ 168, ECF No. 1), and that the alleged perpetrators of John Doe 3's abuse were Rockstar employees, (Id. ¶¶ 16, 17, ECF No. 1.) Therefore, because Plaintiff has failed to allege the existence of an employment relationship between USASF and the individual Defendants, the court grants USASF's motion to dismiss Count V. Bank of N.Y. v. Sumter Cnty., 691 S.E.2d 473, 478 (S.C. 2010) (affirming summary judgment in favor of the South Carolina Judicial Department because there was no evidence that a county's master-in-equity was employed by the Department).

27

## F. Breach of Contract (Count VII)

To state a claim for breach of contract, Plaintiff must allege "the existence of a contract, its breach, and damages caused by such breach."  Hotel & Motel Holdings, LLC v. BJC Enters., LLC, 780 S.E.2d 263, 272 (S.C. Ct. App. 2015).

Plaintiff alleges that he entered into annual membership agreements with USASF in which USASF "agreed to provide a competitive environment that was safe, secure, and free from harm, specifically physical and sexual abuse."  (Compl. ¶ 295, ECF No. 1.)  Plaintiff contends that USASF breached the "fundamental and material" terms of these agreements since he was subject to "severe and oppressive" physical and mental abuse by coaches affiliated with a USASF-certified gym and at competitions overseen by USASF.  (Id. ¶¶ 296-98, ECF No. 1.)

In response, USASF does not dispute that valid contracts existed between the parties. USASF instead submits that its investigatory obligations were not triggered until it received a report of abuse and that, because Plaintiff "[n]ever reported any alleged abuse to USASF," no breach could have occurred.  (USASF's Mem. Supp. Mot. Dismiss 32, ECF No. 65-1.)  In advancing these arguments, USASF relies on its current Terms and Conditions for Athlete Membership and its current Code of Conduct & Compliance.  (Id. 32, ECF No. 65-1.)

Neither side, however, has proffered the membership agreement that was in effect at the time Plaintiff was allegedly abused.  Without that agreement, the court is left to speculate as to the "fundamental and material" terms that governed the parties' relationship.  (Compl. ¶ 298, ECF No. 1.)  As a result, the court finds that USASF's arguments related to Plaintiff's breach-of-contract claim are better suited for resolution at a later stage.  USASF's motion to dismiss Count VII is denied.

28

### G. Fraud (Count IX)

"Fraud is an intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to [a person] or to surrender a legal right." Regions Bank v. Schmauch, 582 S.E.2d 432, 444 (S.C. Ct. App. 2003). To plead fraud under South Carolina law, a plaintiff must plausibly allege

> (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

Id. at 444-45. "The failure to prove any element of fraud or misrepresentation is fatal to the claim." Schnellmann v. Roettger, 645 S.E.2d 239, 241 (S.C. 2007).

Along with pleading these elements, a party alleging fraud in federal court must also "state with particularity the circumstances constituting [the] fraud" under Federal Rule of Civil Procedure 9(b). Those circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby," Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 553 (4th Cir. 2019) (internal quotation marks omitted) – or more simply, "the who, what, when, where, and how of the alleged fraud," United States ex rel. Taylor v. Boyko, 39 F.4th 177, 190 (4th Cir. 2022) (internal quotation marks omitted). "A lack of compliance with Rule 9(b)'s pleading requirements is treated as failure to state a claim under Rule 12(b)(6)." Id. (internal quotation marks omitted).

Plaintiff's fraud theory is that Defendants knowingly misrepresented the safety of their competitions and Rockstar Cheer to entice Plaintiff and his family to pay annual dues and fees. (Compl. ¶¶ 309-10, 314-15, ECF No. 1.) Plaintiff argues that his fraud claim should survive

dismissal because he has identified "numerous specific misrepresentations by Defendant USASF about making All-star cheer safe for athletes, including misrepresentations related to the safe[ty of] competition and gym environment[s], credentialing and certification of gyms and coaches, and centralized reporting." (Resp. Opp'n USASF Mot. Dismiss 28, ECF No. 75.) The court disagrees.

To begin, the complaint improperly relies on group pleading. The eleven paragraphs in Plaintiff's fraud count contain only vague allegations, unattributed to any specific Defendant. (Compl. ¶ 310, ECF No. 1) ("Defendants represented to Plaintiff that . . . ."); (Id. ¶ 311, ECF No. 1) ("Defendants' promises . . . ."); (Id. ¶ 316, ECF No. 1) ("Defendants' misrepresentations included . . . ."). Plaintiff cannot satisfy Rule 9(b)'s heightened pleading standard by "grouping defendants together" and failing to "specify[] which defendant committed which wrong." Toney v. Lasalle Bank Nat'l Ass'n, 896 F. Supp. 2d 455, 480 (D.S.C. 2012); Ascente Bus. Consulting, LLC v. DR myCommerce, 9 F.4th 839, 845 (8th Cir. 2021) ("It is not sufficient to attribute alleged false statements to 'defendants' generally.").

Even if the court were to consider Plaintiff's RICO case statement in evaluating his fraud claim, Plaintiff does not allege how any of the statements he attributes to USASF – USASF social media posts from August 2022 and representations from its website related to participant safety[9] – were demonstrably false at the time they were made.

---

[9] These statements include, for example:

- "Athlete Safety is our #1 Priority! Our mission includes 'strive for a safe environment for our athletes.' To the USASF, safety extends beyond our Cheer or Dance safety rules for performance. We're committed to helping our members create the safest overall environment for every All-Star athlete, so we've made resources available for use in gyms and studios."

Equally problematic, Plaintiff's pleadings do not specify which, if any, of those statements he relied on in deciding to become a USASF member and compete at USASF-sanctioned events.  "How and whether a party relied on a misstatement is every bit as much 'circumstance[] constituting fraud' as any other element."  <u>Xia Bi v. McAuliffe</u>, 927 F.3d 177, 185 (4th Cir. 2019) (affirming dismissal of fraud claim for failure to comply with Rule 9(b) where complaint "d[id] not state which of the named [p]laintiffs claims to have relied on each

--------

• "Attend any USASF Sanctioned competition and find peace of mind knowing minimum safety standards will be met and the same rules and regulations will be followed every time, at every event, by ever[y] member. . . . USASF-sanctioned competitions have resources to provide the safest and healthiest competitive atmosphere and the best possible on and off the floor experiences for athletes."

• "Our purpose is to encourage a community and culture of health, safety, and excellence where Athletes and other participants can thrive. . . ."

• "From requiring background screenings for adults in All Star to creating and enforcing safety standards at all USASF Sanctioned Competitions and developing tools for clubs to train young athletes, the highest priority for the USASF is the safety and protection of athletes in All Star."

• "USASF is the U.S. All Star Federation.  It's about safety standards.  It's about coaches' education.  It's about providing a safe environment to allow for the continued growth of All-Star cheerleading and dance across the country.  It's about parents knowing their children are being taught using safe methods that are in accordance with the standard of care.  It's about standardization of rules from one competition to the next.  It's about time."

(RICO Case Statement 20-21, 30-33, ECF No. 17.)  Most of the statements constitute nonactionable puffery.  <u>See</u> <u>CRC Scrap Metal Recycling, LLC v. Hartford Cas. Ins. Co.</u>, 531 F. App'x 333, 335 (4th Cir. 2013) (unpublished) ("An insurer's vague puffery that a policy provides the 'best and broadest' available coverage does not constitute a factual misrepresentation."); <u>Doe v. Uber Techs., Inc.</u>, 551 F. Supp. 3d 341, 368 (S.D.N.Y. 2021) ("The language that Uber is 'committed' to connecting consumers to the 'safest ride on the road' is aspirational puffery."); <u>In re Ford Motor Co. Securities Litig., Class Action</u>, 381 F.3d 563, 570 (6th Cir. 2004) (statement that "Ford is a worldwide leader in automotive safety" not actionable).

statement, or where or how any specific [p]laintiff heard or learned of the alleged statements").

Further, although Plaintiff generally alleges that he "had a right to rely upon Defendants'

promises," (Compl. ¶ 312, ECF No.1), that is merely a "formulaic recitation" of the eighth

element of a fraud claim, Iqbal, 556 U.S. at 681; see Belvin v. Sedgewood Manor Health Care

Cntr., LLC,  No. 3:21-cv-02169-JMC, 2022 WL 845817, at *4 (D.S.C. Mar. 22, 2022)

(unpublished) (dismissing fraud claim where plaintiff merely alleged that "Plaintiff and his

family had a right to rely on the misrepresentations and concealments made by the defendant").

Similarly, Plaintiff makes the generalized claim that Defendants' alleged misrepresentations

about "the safety and security of their gyms, competitions, and camps . . . lull[ed] *parents* into

comfort," (Compl. ¶ 69, ECF No. 1) (emphasis added), yet fails to specify whether his parents

were in fact misled by the representations.

In sum, Plaintiff's failure to satisfy Rule 9(b)'s particularity requirement is fatal to his

fraud claim, and Count IX is dismissed as to USASF.

### H. Civil Conspiracy (Count XI)

To state a civil-conspiracy claim, a plaintiff must allege four elements: "(1) the

combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act

by unlawful means, (3) together with the commission of an overt act in furtherance of the

agreement, and (4) damages proximately resulting to the plaintiff." Paradis v. Charleston Cty.

Sch. Dist., 861 S.E.2d 774, 780 (S.C. 2021).  Because "civil conspiracy is an intentional tort, an

intent to harm . . . [is] an inherent part of th[is] analysis." Id. at 780 n.9.  A plaintiff asserting a

civil-conspiracy claim must also allege acts "in furtherance of the conspiracy in a manner

separate and independent from [their] other causes of action." Jinks v. Sea Pines Resort, LLC,

No. 9:21-cv-00138-DCN, 2021 WL 4711408, at *3 (D.S.C. Oct. 8, 2021) (unpublished). Stated another way, if "the particular acts charged as a conspiracy are the same as those relied on as the tortious act or actionable wrong, plaintiff cannot recover damages for such act or wrong, and recover likewise on the conspiracy to do the act or wrong." Todd v. S.C. Farm Bureau Mut. Ins. Co., 278 S.E.2d 607, 611 (S.C. 1981), overruled on other grounds by Paradis, 861 S.E.2d at 780.

Here, Plaintiff has merely summarized the allegations underlying his other causes of action and repackaged them into a claim for civil conspiracy. Plaintiff's civil-conspiracy claim is the last count in his complaint. (Compl. ¶¶ 327-41, ECF No. 1.) It incorporates all preceding allegations and generally alleges that Defendants misrepresented the safety of their gyms and competitions, failed to take appropriate action when faced with allegations of abuse, and reaped substantial financial benefits in the form of dues and fees. (Id. ¶¶ 327, 330-31, 336-37, 339-40, ECF No. 1.) But because Plaintiff has not identified "additional acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in [his] complaint," Hackworth v. Greywood at Hammett, LLC, 682 S.E.2d 871, 875 (S.C. Ct. App. 2009), overruled on other grounds by Paradis, 861 S.E.2d at 780, he has failed to state a valid claim for civil conspiracy. As a result, the court grants USASF's motion to dismiss Count XI.

## V. CONCLUSION

For the reasons above, the court **GRANTS** USASF's motion to dismiss as to Count I (CAVRA), Count II (RICO), Count III (SCUTPA), Count V (negligent supervision), Count IX (fraud), and Count XI (civil conspiracy), but **DENIES** USASF's motion as to Count IV (gross negligence) and Count VII (breach of contract).

It is therefore

**ORDERED** that USASF's motion to dismiss, docket number 65, is granted in part and denied in part.

**IT IS SO ORDERED.**


s/Henry M. Herlong, Jr.
Senior United States District Judge


Greenville, South Carolina
June 21, 2023